UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                      |   |                                |
|--------------------------------------|---|--------------------------------|
| JAMES MACKENZIE,                     | ) |                                |
|                                      | ) |                                |
| Plaintiff,                           | ) |                                |
|                                      | ) |                                |
| v.                                   | ) | Civil Action No. 13-13081-DJC  |
|                                      | ) |                                |
| BART NELSON et al.,                  | ) |                                |
|                                      | ) |                                |
| Defendants.                          | ) |                                |

## MEMORANDUM AND ORDER

CASPER, J.                                                                              March 23, 2015

### I. Introduction

Plaintiff James Mackenzie ("Mackenzie"), proceeding *pro se*, has filed this lawsuit against Defendants Bart Nelson ("Nelson"), Lawrence Weiner ("Weiner"), Trish Grant ("Grant"), Bruce Gelb ("Gelb") and Luis Spencer ("Spencer")[1], alleging negligence and violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. D. 1. Mackenzie seeks declaratory and injunctive relief in addition to compensatory and punitive damages on the basis that the Defendants denied him treatment for Hepatitis C. Id. Defendants Gelb, Spencer and Weiner have moved to dismiss, or in the alternative, for summary judgment. D. 34; D. 66. For the reasons stated below, the Court DENIES IN PART and ALLOWS IN PART the Defendants' motions.

---

[1] Defendants Nelson, Weiner, Grant and Gelb are sued in their individual capacities only, while Spencer is sued in both his official and individual capacities. D. 1 ¶¶ 4-8.

1

## II. Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court asks whether the complaint offers "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). First, the Court must distinguish between factual and conclusory legal allegations in the complaint. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Second, taking the plaintiff's factual allegations as true, the Court must draw "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft, 556 U.S. at 677). However, "[i]n determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" Garciá-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal citations omitted). A *pro se* plaintiff is entitled to a liberal reading of his allegations, no matter how inartfully pled. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004). Furthermore, a *pro se* complaint "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks and citation omitted).

**III. Factual Background**

Unless otherwise noted, the following facts are as alleged in the complaint, D. 1, assumed to be true for the purposes of this motion.[2] Mackenzie is an inmate in the custody of the Massachusetts Department of Corrections ("DOC") and was housed at Souza Baronowski Correctional Center ("SBCC"), where Defendant Gelb was Superintendent, during the period relevant to the complaint. Id. ¶¶ 3, 7. Defendant Luis Spencer is Commissioner of the Massachusetts Department of Corrections ("DOC"), id. ¶ 8, and Defendant Weiner is Assistant Deputy Commissioner of Clinical Services. Id. ¶ 6.

Mackenzie contracted Hepatitis C in or about 2005. Id. ¶ 10. In approximately May 2011, Mackenzie's liver enzymes tested higher than normal and he was formally diagnosed. Id. ¶ 11. In or about June 2011 he visited Shattuck Hospital where a physician told him his viral load was "very high." Id. ¶¶ 12-13. Mackenzie was placed on a waiting list to receive a liver biopsy. Id. ¶ 14. Mackenzie did not receive a biopsy for at least six months, during which time he experienced unusual weight loss, nausea and chronic fatigue. Id. ¶ 16. Mackenzie relayed these symptoms to SBCC medical staff. Id. ¶¶ 15-16. In September 2012, Mackenzie filed a grievance about this matter. Id. ¶ 17. Thereafter, and as a result of the grievance, he had a video conference with Dr. Steffano, a physician at Shattuck Hospital. Id. ¶ 18. Dr. Steffano told Mackenzie he should undergo a liver biopsy and begin Hepatitis C treatment. Id. ¶¶ 19-20. In

---

[2]The DOC Defendants provided additional materials to convert their motion to summary judgment, including a statement of material facts in an affidavit from Stephanie Collins, Assistant Deputy Commissioner of Clinical Services, along with supporting exhibits. D. 36. Mackenzie has objected to the admission of the document, D. 37 at ¶¶ 7-8; D. 41 at 3, and the Court stayed discovery pending the resolution of the pending motion to dismiss, D. 46. While Defendants have presented evidence outside of the complaint in support of their claims, Mackenzie has not been "given a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion." Fed. R. Civ. P. 12(d). Thus, the Court will not convert the motion, although Defendants may file same after the parties have a proper opportunity to develop the record.

December 2012, Mackenzie underwent a biopsy, and the doctor who interpreted the results, Dr. Smith, told him that he had fibrosis of the liver. Id. ¶¶ 21-22. Dr. Smith said he would inform the medical contractor responsible for inmate health care, Commonwealth Medicine, that Mackenzie would "need to start and receive treatment" for Hepatitis C. Id. ¶ 23. Mackenzie relayed this information to Nelson, a nurse practitioner at SBCC, id. ¶ 4, and also informed Nelson that he was still suffering from unusual weight loss and fatigue. Id. ¶¶ 24, 26. Nelson told Mackenzie his liver "was not that far gone and that he did not need any treatment." Id. ¶ 25. Nelson told Mackenzie he would not receive Triple Therapy treatment recommended by the physicians. Id. ¶ 27. Nelson told Mackenzie he would be eligible for another biopsy in three years and that he might begin therapy if a later biopsy showed a worsening of his liver. Id. ¶ 28. The complaint alleges Nelson told Mackenzie that his condition would be monitored but that Mackenzie has not received such monitoring. Id. ¶¶ 29-30.

In or about February 2013, Mackenzie notified Gelb and Grant that he had not received the treatment recommended by Dr. Steffano and Dr. Smith. Id. ¶ 31. Grant informed him that he would not receive the Triple Therapy treatment. Id. ¶ 32. Mackenzie then contacted Weiner requesting the treatment and also an appointment with a hepatologist, which Weiner denied. Id. ¶¶ 33-34. The complaint alleges that Gelb and Weiner's failure to prevent the alleged malpractice of Grant and Nelson demonstrates deliberate indifference and has contributed to the possibility of further harm to his liver in violation of Mackenzie's Eighth Amendment rights. Id. ¶ 38. The complaint also alleges that Spencer's failure to supervise and institute appropriate polices for Nelson, Grant and Gelb similarly violate his Eighth Amendment rights. Id. ¶ 39.

IV. **Procedural History**

Mackenzie filed this lawsuit on November 25, 2013. D. 1. On June 10, 2014, Defendants Gelb and Spencer moved to dismiss, or in the alternative for summary judgment, D. 34, and the Court granted Weiner's later request to join that motion. D. 66; D. 77. The Court referred the negligence claim as to the medical defendants, Nelson and Grant, to a medical malpractice tribunal pursuant to Mass. Gen. L. c. 231, § 60B. D. 44; D. 79. Nelson and Grant have moved for summary judgment on the remaining claims and that motion is not yet ripe. D. 81. As to Gelb, Weiner and Spencer's (the "DOC Defendants") motion to dismiss, the Court has reviewed the filings and opposition and now addresses this motion.

## V.     Discussion

As a preliminary matter, the Court notes that the negligence claims against the DOC Defendants cannot proceed. The Massachusetts Tort Claims Act ("MTCA") authorizes suits against public employers but does not allow for personal liability as to employees for their negligent conduct. Mass. Gen. L. c. 258 § 2. See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (providing, "negligence claims against the Department of Corrections defendants in their individual capacities are barred because the Tort Claims Act shields public employees from personal liability for negligent conduct"). The negligence claim against Spencer in his official capacity, in actuality a claim against the DOC itself, Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 222 (1st Cir. 2003), must also be dismissed. Caisse, 346 F.3d at 218 (providing, "[p]rospects are no better for [the plaintiff's] official-capacity, negligence claims against the Department of Corrections defendants because these claims will not survive Eleventh Amendment scrutiny"); Jaundoo v. Clarke, 690 F. Supp. 2d 20, 27-28 (D. Mass. 2010) (refusing to allow amendment of the complaint to add a negligence/medical malpractice claim against

prison medical contractor because contractor was "immune from suit for negligence/medical malpractice in this forum").

As to the Eighth Amendment claim, Spencer may be sued for money damages in his personal capacity and is also a proper party in his official capacity for the purposes of equitable relief, as "[a] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n. 10 (1989) (citations omitted). Any claims for money damages against Spencer in his official capacity are barred, as "[i]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action," Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009) (quotations and citations omitted) (alteration in original).

A. **Alleged Eighth Amendment Violation**

Mackenzie alleges a violation of the Eighth Amendment's prohibition against cruel and unusual punishment as a result of the Defendants' failure to provide him treatment for Hepatitis C, specifically a "Triple Therapy" treatment. D. 1.[3] The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment claim "based on medical mistreatment requires more than 'an inadvertent failure to provide adequate medical care' and must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle, 429 U.S. at 97). "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong

---

[3] Although the first page of Mackenzie's complaint alleges his "denial of ordered medical treatment" violates his due process rights, nowhere else does his complaint make reference to a due process violation. Because his claims sound under the Eighth Amendment, they will be considered under that framework. See Pagan v. Calderon, 448 F.3d 16, 34 (1st Cir. 2006).

that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014). Deliberate indifference cannot be satisfied by mere substandard treatment but must "requir[e] actual knowledge of impending harm." Feeney, 464 F.3d at 162 (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)). The care must be "so inadequate as to shock the conscience." Id. (quoting Torraco v. Maloney, 923 F. 2d 231, 234 (1st Cir. 1991)).

Mackenzie alleges that despite multiple recommendations from physicians that he receive treatment for hepatitis, id. ¶¶ 20, 23, and his continual suffering from usual weight loss and fatigue, id. ¶ 26, Defendant Nelson denied that he needed the treatment, id. ¶ 25. Although he was told his condition would be monitored, id. ¶ 29, he alleges that he did not receive monitoring, id. ¶ 30, causing his liver to deteriorate, id. ¶ 36. Mackenzie further alleges that he grieved the matter to Defendants Gelb, Grant and Weiner, but failed to receive appropriate treatment. Id. ¶¶ 31-34. He further alleges that Spencer's failure to supervise and adopt proper policies caused Nelson, Grant and Gelb to violate his rights. Id. ¶ 39.

*1.    The Objective Prong:  Serious Medical Need*

Mackenzie alleges that as a result of hepatitis C, he has experienced "unusual weight loss, nausea, and chronic fatigue." D. 1 ¶ 16. His complaint provides Dr. Stefano, with whom Mackenzie had a consult in Fall 2012, "recommended that the plaintiff should begin Hep C treatment therapy." Id. ¶ 20. He also alleges that Dr. Smith, the physician who later completed his liver biopsy in December 2012, informed him that he appeared to have liver fibrosis and "that he would need to start and receive treatment for his Hep c." Id. ¶ 22-23. The complaint alleges Mackenzie continued to suffer unusual weight loss and fatigue, id. ¶ 26, and that the lack of treatment is causing additional harm to his liver. Id. ¶ 36.

7

While "[a] medical need is serious if it is one that has been diagnosed by a physician as mandating treatment," Gaudreault v. Mun'y of Salem, Massachusetts, 923 F.2d 203, 208 (1st Cir. 1990) (internal quotations and citation omitted), "[t]his prong does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." Kosilek, 774 F.3d at 82. Nevertheless, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle, 429 U.S. at 103. The complaint alleges two physicians recommended that he begin treatment, id. ¶¶ 20, 22, that he continued to suffer unusual weight loss and fatigue, id. ¶ 26, and that the lack of treatment is causing additional harm to his liver. Id. ¶ 36. This plausibly raises the inference that Mackenzie's hepatitis C was so advanced that a failure to treat sounded not in negligence but instead in a life-threatening refusal to provide necessary care. Because, at this stage, the Court must take all allegations in the complaint as true and a *pro se* plaintiff is entitled to a liberal reading of his allegations, the Court finds the allegations in the complaint sufficient to satisfy this prong at the motion to dismiss stage.

  *2. The Subjective Prong: Deliberate Indifference*

"[D]eliberate indifference defines a narrow band of conduct and requires evidence that the failure in treatment was purposeful." Kosilek, 774 F.3d at 83 (quotation marks and internal citation omitted). The complaint must allege that the Defendants disregarded "substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 83 (1994). The official must have "an actual, subjective appreciation" of this risk, and "cannot be deliberately indifferent if they responded reasonably to the risk." Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)

At this stage, construing the complaint liberally where the plaintiff proceeds *pro se* and assuming its allegations to be true, the complaint states an Eighth Amendment violation.

8

Defendants' reliance upon Hennessy v. Dennehy, No. 08-cv-11724-NG, 2010 WL 3464234, at *9 (D. Mass. Sept. 1, 2010) does not merit a different result. The dismissal in Hennessy turned in part on the plaintiff's failure to "supplement[] the meager allegations made in his complaint by offering more evidence" in response to the Defendant's motion for summary judgment. Id. The court concluded "[i]t thus follows that even if Mr. Hennessy's claims were adequately pleaded, the Court would be compelled to grant Commissioner Clarke and Mr. Dickhaut summary judgment under Rule 56(c)." Id. This case is not at the same procedural stage as Hennessy. Further, insofar as the Defendants ask the Court to dismiss based on the contractual relationship between the medical contractor and the DOC pursuant to which all medical decisions are referred to the contractor, the Court in Hennessy relied on the documents themselves outlining the relationship between the entities, evidence upon which the Court does not rely to resolve this motion to dismiss.

As to Gelb and Weiner, despite Defendants' contention that Gelb's "only involvement in this case entailed forwarding a letter from plaintiff to defendant Grant, UMCH's Regional Director, asking her to respond, tacitly requesting that she and UMCH exercise their independent professional judgment," D. 35 at 6, Mackenzie alleges he informed Gelb in September 2012 that he was not receiving treatment, D. 1 ¶ 17, that he thereafter visited with two doctors who each recommended that he begin treatment, id. ¶¶ 20, 23, and that months later in February 2013, Mackenzie informed Gelb he still had not received treatment as recommended by the doctors at Shattuck Hospital, id. ¶ 31, after which point he informed Weiner, who also denied treatment. Id. ¶ 34. While Defendants correctly note that the First Circuit failed to find an Eighth Amendment violation based on failure to provide a specific hepatitis treatment in Castello v. Martin, 197 F. App'x 14, 16 (1st Cir. 2006), that case was decided at the summary judgment

9

stage, when evidence showed the Defendants "monitored Castello's medical condition through regular blood tests and a liver biopsy, which ha[d] consistently shown that [the Plaintiff suffered] from a mild form of the disease." Id. Whether a more developed record will indicate a similar conclusion is not for the Court to determine at this stage.

As to Commissioner Spencer, however, the only allegation in the complaint is that his "failure to supervise and to have policies in place [caused] defendants Nelson, Grant, and Gelb to violate the plaintiff's constitutional rights." D. 1 ¶ 39. Defendants contend Hennessey mandates Spencer's dismissal because he "is not alleged to have any knowledge, much less taken any action, concerning plaintiff's medical issues." D. 35 at 5. While § 1983 does not allow for *respondeat superior* liability, Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997), Spencer may nevertheless be liable if he "formulates a policy or engages in a practice that leads to a civil rights violation" and has notice thereof. Camilo–Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). Mackenzie's single-sentence allegation that Spencer has failed to supervise or promulgated a policy that resulted in constitutional violations, however, is wholly conclusory. Further, there are no factual allegations that Gelb or Weiner's actions were taken pursuant to any particular DOC policy or as a result of Spencer's failure to supervise, or that Spencer had any knowledge of the alleged harm. As a result, it has not been plausibly alleged that Spencer was deliberately indifferent and the claim against him must be dismissed. To the extent that Spencer is also sued in an official capacity, the allegations in the complaint are again wholly conclusory as to whether the alleged unconstitutional inaction by the DOC officials was the result of policy, custom or practice. Dirrane v. Brookline Police Dept., 315 F.3d 65, 72 (1st Cir. 2002). Accordingly, the official capacity claim against Spencer is dismissed as well.

Mackenzie alleges sufficient factual allegations upon which to infer that Gelb and Weiner were aware of his condition and his lack of treatment, creating a plausible inference that in denying his requests the Defendants were deliberately indifferent. The complaint alleges Mackenzie grieved to Gelb and Weiner that he had not received treatment for hepatitis as recommended by two different doctors. D. 1 ¶ 31 ("the plaintiff informed defendants Gelb and Grant that he was not receiving the [recommended] treatment by doctors at Shattuck Hospital"); Id. ¶ 33 ("the plaintiff then asked defendant [W]einer to get the 'Hep C Triple Therapy,' and to see a Hepatologist so he can get his Hep C treated"). Based on these allegations, the Court will allow the claim to proceed against Gelb and Weiner.

### B. Qualified Immunity

The DOC Defendants also assert they are entitled to qualified immunity because they have shown "they are entitled to dismissal of plaintiff's claims as a matter of law. If the law is clearly established in defendants' favor, *a fortiori* the law is not clearly established in plaintiffs' favor." D. 35 at 8. Qualified immunity protects state actors from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted). A qualified immunity inquiry is twofold: the Court asks: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (citation omitted). The second prong requires an analysis of whether the legal contours of the right were sufficiently clear that a reasonable officer would have understood he was violating the right, and whether the officer would have in fact understood his

conduct to violate that right.  Id.  The Defendants bear the burden of proving that qualified immunity applies.  DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001).

Here, Defendants argue only that because they should prevail on the merits of their motion, they are entitled to qualified immunity.  D. 35 at 7-1.  They do not expound on why they are otherwise entitled to this defense and given that the burden is on the Defendants to prove they are entitled to it, DiMarco-Zappa, 238 F.3d at 35, this alone might end the matter.  Mackenzie, in opposing a grant of qualified immunity, contends that the denial of medical care is a clearly established constitutional violation and that a reasonable person would know he is entitled to adequate health care.  D. 56 at 6.  But "courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning."  Vélez-Díaz v. Vega-Irizarry, 421 F.3d 71, 78 (1st Cir. 2005) (quoting Butera v. District of Columbia, 235 F.3d 637, 646-50 (D.C. Cir. 2001)).  Rather, "[i]t is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition," Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted), and "what matters is whether in the circumstances faced by the official, he should reasonably have understood that his conduct violated clearly established law."  Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998) (citation omitted).

The Court, at this juncture, cannot conclude that Weiner and Gelb are entitled to qualified immunity where the allegations of the complaint allege a complete denial of medical treatment as prescribed by two different doctors and also that Mackenzie has not received monitoring of his condition as promised by prison medical staff.  See Dantone v. Bhaddi, 570 F. Supp. 2d 167, 174 (D. Mass. 2008) (refusing to apply qualified immunity at motion to dismiss stage when plaintiff was not "alleging merely negligent treatment, he [was] alleging no significant treatment at all").

Although the First Circuit's decision in Castello indicates there may be some context in which it may be reasonable to delay treatment for prisoners suffering from mild forms of hepatitis, taking the allegations in the complaint as true and making all inferences in Mackenzie's favor, the complaint alleges a complete absence of treatment. Because Mackenzie's complaint plausibly alleges an absence of treatment for a serious medical need, the Court cannot resolve the qualified immunity issue at this juncture.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Defendants' motions to dismiss, D. 34; D. 66. The Court ALLOWS the motions as to any negligence claims against Gelb, Weiner and Spencer. The Court DENIES the motions as to the Eighth Amendment claims against Gelb and Weiner. Finally, the Court ALLOWS the motions as to Spencer.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge